Kelly Chanfrau is here for the appellant Lapham, and Gregory Herring is here for Walgreen. And Ms. Chanfrau, you may begin. Thank you, Your Honors. Some revisions in this case should be reversed because Ms. Lapham marshaled enough evidence for a reasonable jury to conclude that Walgreens interfered with her FMLA rights and benefits and fired her in retaliation for her FMLA-protected activities and complaints, no matter the standards. Here, Walgreens can point to no case with similar facts where this honorable court has not reversed summary judgment. First, today, I will address the standard. Next, I will address the direct and circumstantial evidence Ms. Lapham provided to present a jury question. Third, I will address how the lower court aired. And fourth, the interference in Florida Whistleblower Act claims. First, beginning with Griffin v. Waterworks in 2001 and continuing through the next two decades, this honorable court has consistently used motivating factor language when analyzing FMLA retaliation claims. Consistent with this court's routine holdings, Ms. Lapham presented her case and evidence through the familiar McDonnell-Douglas frameworks. She established evidence of a prima facie case and pretext. She followed these standards when presenting her case, and the lower court found twice that she met the motivating factor standard. However, Ms. Lapham has not only met the burden of establishing a motivating factor standard, we respectfully submit that the evidence she presented in this case also presents a jury question on but-for causation, as there can be many causes for but-for causation. Either way, a jury trial is warranted. Now, I would first like to address what we submit is direct evidence, and there is unique evidence that was discovered during discovery in this case. The Walgreens logs are direct evidence, and if they are not direct evidence, they are certainly incredibly strong circumstantial evidence of an FMLA animus by the decision maker, Lisa Shelton. These call logs alone, with only a timing of seven days before her firing, should allow her to proceed to a jury trial under either a motivating factor standard or a but-for standard, because they show that the decision maker in this case, Lisa Shelton, requested to fire Ms. Lapham on the basis of her FMLA-protected activities. I know you're arguing that your client has satisfied either standard, and if I had to ask you, though, which one is the appropriate one, I'm assuming you're going to argue motivating factor. Is that correct? Yes, Your Honor. And so why don't you walk me through, especially in a post-Bostock world, why we're not in a but-for world, why you think we're in a motivating factor world. Thank you, Your Honor. We are in a motivating factor world because when Congress wrote the FMLA, they wanted it to be very protective of women and men seeking leave relating to caring for their children and family. They wanted it to be an expansive law. And when they enacted the FMLA, they used the words for. They did not use because of, which the United States Supreme Court has said because of means but for. They used the word for, which is an ambiguous term. Also, when Congress enacted the FMLA, they delegated rulemaking authority to the Secretary of Labor. In order to enact rules, in order to enforce the FMLA. In compliance with that mandate by Congress, the Secretary of Labor enacted a rule that says that an employer, in effect, cannot take any, cannot use FMLA as a negative factor in any employment decision. That has been coined or used by courts to mean motivating factor. That is a lesser standard under law for a plaintiff to prove that she has or he been discriminated against or retaliated against under the FMLA. So that is why we believe that motivating factor is the standard. That, and we believe that is appropriate. Unlike Title VII. So, but my question was also directed at Bostock. So how do we, how is Bostock factoring into your analysis? Can you describe what you mean by Bostock? Well, just as far as the, first of all, do you think that Bostock is going to have any application to your case? And when just in walking through but for causation. I'm sorry, I'm not familiar with Postock. Bostock. Oh, Bostock. Bostock, sorry. Yes, okay, so I'm so sorry. I apologize. Okay, so with the Bostock case, okay, even with but for cause, under Bostock, Ms. Lapham is not required to prove that, even under Bostock, Ms. Lapham would not be required to prove that FMLA would be the only cause for her firing, as there can be several but for causes for a termination, even under Bostock. And even the 11th Circuit has also held that but for cause does not require a single cause produce a single result. In fact, it can be the straw that broke the camel's back. The Bostock court also held that a defendant like Walgreens here cannot avoid liability by just citing some other factor that contributed to its challenged employment decision. Just because Walgreens asserts, as they do here, that Ms. Lapham was fired for lying and insubordination does not also mean that they fired her because she was engaging in protected activities. This is for the jury to decide if her FMLA was a but for cause, because there can be more than one but for cause. Now, interestingly enough, the 11th Circuit reviewed a but for case in Sims v. MVM, which was 704 F. 3rd 1329. And that was an ADA case where the court was looking at but for cause. And in that case, this court held that a plaintiff will always survive summary judgment if she presents circumstantial evidence of the employer's discriminatory intent. And that is very instructive here because Ms. Lapham's evidence that she's marshaled in this case shows discriminatory intent, especially with, for example, the call logs that were detailed six to seven days prior to her firing. She also presented documented hostile—not documented, excuse me, because the call logs were documented. She also presented hostile and derogatory comments that were made within the two weeks prior to her firing by Lisa Shelton to the jurors in response to her FMLA requests. She also presented interference and obstruction by Ms. Shelton, the decision maker. And this interference and obstruction occurred within the two weeks prior to her firing. She also presented evidence of the fact that Ms. Shelton refused to give her time off to care for her disabled son in the two weeks prior to her firing. She also presented Walgreens policy violations, which also were a violation of federal law because Walgreens failed to give her notice of her rights within five days of when Ms. Lapham presented her FMLA paperwork to Walgreens. And then finally, she also established pretext in several ways. And I am— I believe you also make an argument in your brief that the court should have taken into consideration evidence of the events that took place after April the 5th of 2017. Yes, Your Honor. We do. And thank you. The lower court used April 5th as an arbitrary cutoff date for protected activities. However, in doing so, and respectfully, perhaps not realizing that on April 5th, Lisa Shelton commingled her request to fire Ms. Lapham with her concerns of FMLA activities. So on April 5th, this was an ongoing chain link in Ms. Shelton's retaliation. Her retaliation was continuing throughout the two weeks prior to her firing. And April 5th was not a break in the links. April 5th, especially based upon the call logs, was a continuing chain in her retaliation when she said that she was going to request to fire Ms. Lapham based upon her FMLA-protected activities. So it wasn't a break in retaliation by any means whatsoever. And also, the following day on April 6th, after April 5th, Ms. Lapham requested a day off to stay home with her disabled son because his caretaker went to the hospital. Ms. Shelton refused to allow her that day off. The next day on April 7th, because Ms. Shelton had failed to turn in Ms. Lapham's FMLA paperwork, Ms. Lapham complained again. On April 10th, three days before Ms. Lapham's termination, she elevated her complaints to Human Resources and said, Ms. Shelton is discriminating against me, harassing me, and retaliating against me. And on the basis of FMLA, please help. In response to that, HR told Ms. Lapham that they would investigate Ms. Shelton and that her PIP would be extended. And HR also called Ms. Shelton and told her to extend Ms. Lapham's PIP. And, of course, three days later, Ms. Shelton fired Ms. Lapham. So, we agree, Your Honor, that April 5th, of course, should not have been a stop in what has happened. It should be able to be used in a jury trial for retaliation. You're not suggesting, though, that just because an employee has an FMLA request pending or perhaps even a request granted, that that inoculates the employee from being fired? Absolutely not, Your Honor. There are times, of course, when an employee has requested FMLA and, for example, gets caught using drugs or steals or does something so horrific that the employer can terminate the employee. There will be times, for example, if an employee gets arrested, there could be times that an employer does not have to give an employee FMLA, but this is certainly not the case. Are there times that you have just conceded that, in fact, it doesn't inoculate the employee simply because there's FMLA leave pending? Are there times when summary judgment in those circumstances would be appropriate for the employer? Absolutely, Your Honor. This is not a case, however, where one of those times would be relevant because this is not a case, for example, where Ms. Lapham was on thin ice or where... She was on a performance improvement plan and it had been extended. Right, but Walgreens has conceded that that was not related to her firing. The PIP is not related to her firing. Walgreens also conceded. Lisa Shelton also testified that she was not terminated for performance. Importantly, a key in this case is that the record shows that no one from Walgreens, even Lisa Shelton, the new store manager, ever mentioned anywhere a desire to terminate Ms. Lapham until April 5th, which was seven days prior to her firing, and after she had engaged in multiple protected activities. This is not a case of an employee that is going to be fired and screams FMLA to keep her job. This is not that case. Ms. Lapham needed FMLA desperately in order to care for her disabled son. All right, we have your argument and you've reserved some time, Ms. Janfra. Thank you, Your Honor. We'll hear from Mr. Hearing. Good morning, Your Honor. Craig Hearing, Ben Bard for the FOE, Walgreens Co. Good morning. I want to jump in on the evidence, not the standard, because I think the standard is something that you all may not even have to reach, depending upon where you are on the evidence. And I want to comment about the evidence and some things that were said about it. I want to start with the call logs. Well, why should we adopt the but-for standard instead of the motivating factor standard now? I'm not sure our precedent is clear, and then there's a circuit split. So I think that's an important factor that we need to— Yes, Your Honor, and I'll start there. Okay. And I think it's obvious that we've heard from the Supreme Court multiple times now that in the absence of a standard and a statute that we have to hear from Congress on that, and when we don't, then an intentional tort is but-for. That's Nassar, that's Comcast, that's the age discrimination case. And I will note, you all may have not seen this in passing, because I know it's amazing all the cases you have to deal with in a week like this, but Judge Carnes in the Munoz case, in a concurring and dissenting opinion, said that panel thought that but-for would apply. And this circuit—I'm not suggesting this circuit has ruled that but-for has applied yet. But I think it's an issue, Your Honors. I think because of is but-for. You see that in a lot of cases in the Bostock issue, and I don't contend that but-for is how we win this case. We win this case because there's a lack of evidence showing pretext. And that's how this case was prosecuted, Your Honors, starting with a complaint. Applied pretext, summary judgment, it was argued pretext all the way through until the serve reply when the appellant said a motivating factor. And that's important because I want to talk about, Your Honor, Judge Wilson's quick decision about that and the incongruency between a motivating factor and the McDonnell-Douglas paradigm. And, in fact, Judge Legault was on a panel on the Fante decision, said that this court has never recognized a mixed motive theory or a motivating factor theory on an FML retaliation claim. This all goes to the standard, and the standard should very clearly be that it is but-for or because. And I want to point out specifically about the quick decision. But-for cause is not the same as, I mean, the sole cause. There's a difference between but-for cause and the sole cause. And so it looks to me like the district court applied more of a sole cause determination rather than a but-for cause determination. Your Honor, I think it was a because standard because the court cited all the cases of this circuit that say because of and talks about you have to not only show that it's not the real reason, but the true reason was because of the, in this case, retaliatory animus. And that's where Your Honor, I think, instructively said, and put it in quotations at page 27 and 38 of that decision, that the Donald Douglas framework is stately inconsistent with the mixed motive theory of discrimination because the framework is predicated on proof of a single true reason for adverse action. And he went on to say, Your Honor, thus an employee cannot rebut her employer's proffered reasons for adverse action, but offers evidence demonstrating that the employer also relied on a forbidden consideration. She will not meet her burden. I wrote that. Yes, sir, you did. What's the case site? That's Queen v. Thomas County School District. It's a 2016 decision. And again, the quotations, a pinpoint site is page 12, 37, and 38. And the reason I say that is I'm not putting this all on you, Judge Wilson. Obviously, I'm pointing out this is a 2016 decision. There's 10 cases, including many that they've cited, that talk about that same standard. And so I wanted to get to the evidence, if I may. That call law. Let me ask you one question. You have said because of, and this is what because of means, but the statute we're dealing with says for. Are you saying that's a distinction without a difference? Yes. The legislative history is very important. You all may recall that in 1991, the Civil Rights Act was amended, and it was in response to Price Waterhouse v. Hopkins. I've been doing this over 30 years. I've seen this happen before my very eyes. And there they said motivating factor for Title VII, except it's a non-retaliation. And so later in Nassar in 2013, the Supreme Court says, well, that's important. They didn't do it for retaliation, so it has to be but for. And the FMLA was passed in 1993 during the Clinton administration. And there it said we follow in the legislative history, it said we look to Title VII for our guidance. And it's important in that with regard to the Chevron deference that was brought up indirectly, that there's this regulation about a negative factor. I would submit to you all a negative factor is a mixed motive in a different language. And mixed motive, this Court has said that that doesn't apply in an FMLA retaliation claim. Those are important bases for the but for cause. But I don't think Your Honors have to get to that because, as I said, this was below what was litigated as a pretext case. The pre-trial stipulation, the order, the issue that was raised by the appellant was the termination of pretext for retaliation. And this circuit has standard jury instructions for FMLA retaliation claims. And it says effectively because of, I will read the standard jury instruction. It says that this is standard 4.15. It says that the jury must decide whether the FMLA protected activities was the main reason, in this case, for Walgreens' decision. That's what the plaintiff proposed. And that Walgreens would not have terminated the plaintiff if she hadn't engaged in FMLA protected activity. But everything else had been the same. And so that gets us back to but for is because of. And so I'd like to point out at least on the evidence briefly, if I may. I've still got plenty of time. I'll point out the call logs. Does Bostock change anything? No. I don't think you need to take that, go down that path and consider this. I think it's important that Bo versus Kia, which is an en bas decision you're all very familiar with, I'm sure, follows exactly what I've been saying. And this contention that St. Mary's Honor Center and the Reeves decision somehow changed the standard here. That's not, I think that's, again, I think that that's not really the issue. I think what happened to Judge Byron was that he got that serve reply and he saw a motivating factor and he took that bait. And I don't mean disrespect to the judge at all. Then we pointed out, we said that's not the standard. That's incongruent with the pretext, which Your Honor, Judge Wilson has said and Quigg and others have. And so then he said I write on reconsideration to correct that. And then he said but for. He didn't have to say but for. It was because of. And I think it's just a different way to say it. But the call logs came out and I actually brought them and highlighted them. But I just want to point out a few things rather than read them. They are in the record, the document record 37. And there's perfect pages recited in our brief. But this Amanda Miranda, she testified that Lisa Shelton didn't complain. She testified and she made the notes. This is all the record says about these notes. The person who wrote them was deposed. And now we're getting presented a stretch of the record, I would submit, outside the record to say that it says something different when the person who wrote them explained and said that there was no complaint and that she didn't tie this reference to the leave to the disciplinary things that she was experiencing. That's important, Your Honors, because daily people like us get phone calls from clients. And they say I want to terminate somebody. And you go through and she testified. We go through the prompts with them and we ask them are they on leave? Do they need accommodations? Things like that. And the public policy is we have to be able to ask that because that's what the statutes are there for. And if we're going to be deemed and told we have to have a trial when the only person who wrote the note says they're not linked at all, I ask these things because that's what we're supposed to do. If we're going to have to have a trial because of that, that would, I think, dampen the public policy that the statutes are intended to protect these people for because then we'd stop asking those questions if that means that's evidence of retaliatory intent. It can't be. And then the other comments about the statements, there's two statements in this case by Lisa Shelton. The first one is that there's some maybe dispute as to when they were said in the light most favorable to them, the day after the phone call was responded by the appellee. But where Ms. Shelton was approached by Ms. Lapham and she said I need to take off today, and Ms. Shelton said I've already made the schedule, make accommodations. You need to do your job. You're not doing your job. This is the second statement. The first one was I've made the schedule and you need to make accommodations. Again, Your Honors, this happens in America every single day in businesses where someone says I need to be off today. And if it wasn't planned, then the person says we'll make accommodations. And in this case, there was a request for leave. We don't dispute that, that she finally did leave, but she hadn't been approved yet. And whether there was interference or not, I want to get to that as the last issue because also, Judge Wilson, you've written on that and I want to point out about interference. But what happened here was that she made a request and she was told that that is not anywhere near the nature of the statements, like in Munoz, which they rely on heavily. This is Munoz v. Seelig, which was just filed in this court two years ago, where during a performance meeting, a determination meeting, the plaintiff was told that words to the effect of nobody's out now. You've been out for a year. Who does that? Who's ever been out for a year? And it turned into a termination. And in that case, she'd also been told after she'd missed nearly 100 days or was tardy 100 days, that we'll look through the cat drug end. Clearly, things are laced with sarcasm at best, animus at worst. That's not anywhere near you need to make an accommodation because the schedule is set. Same thing with the Hurlbert case that Judge Wilson wrote the opinion for in 2016, where there were statements. They're not anywhere near the same as what they are here. These are innocuous statements. And to say that there's something else is a false statement, which a false statement doesn't create a genuine issue of fact. It's why when false statements are made that we have summary judgment so that those things get washed away. There was also brought up about the evidence. I'll briefly highlight. We do acknowledge that there is temporal proximity. Judge Wilson and others in the circuit have said temporal proximity alone is not enough to establish pretext. So she has to cobble something else together. She alleged, the plaintiff did, and it was just argued to this court that the Walgreens policies were violated. Again, there's no record evidence that they were violated. The policies are in the record. The policies say that Ms. Shelton has discretion to terminate immediately for the very actions that the plaintiff or the appellate in this case was accused of. And then there was some contention that she didn't meet with the district manager about this. The record says Ms. Shelton testified, and it's in our brief, the pinpoint site, that I believe I did. And Ms. Massick, the district manager, said I just don't recall. And so the stretching of the record to create pretext, these are tiles of pretext, if you will, that Judge Byron pushed away. And in the Fonte case, I thought it was really interesting how the court said that you cannot create a convincing mosaic of discarded pretext tiles. And that's effectively what the plaintiff did. That's an important issue because that is not convincing at all. They are discarded pretext tiles. And together, if you lump them together, it still doesn't make pretext. It still doesn't show that the true reason that Ms. Lapham was let go was because Ms. Shelton had a true faith belief that she was being dishonest. She wasn't following the tasks of the store and was sabotaging it. And we talk about the break in the causal link. I just want to note that we had on the day before she's terminated, a report from a co-worker, another shift lead, that she's doing those exact things. That she's telling employees not to do the tasks. She's sabotaging the store. She's being dishonest. That was on April 12th. She was fired the next day. So she wasn't fired for poor performance. No. Fired for insubordination. Insubordination, dishonesty, and sabotaging the store. And that's another way you can show pretext. Your Honors, know that we've had shifting reasons. These cases that she's cited where summary judgment was reversed. The reasons shifted multiple times in those cases, including in Hurlbut, but up through the appeal. So these cases aren't anywhere near what this is. And the last thing on the interference. You're not termination proof. I do want to point out, there's, of course, the Batson v. Salvation Army case that says that you can use the retaliation evidence to show that the same paradigm of that applies to an interference claim. And here, she wasn't even disciplined for the absences. All this is is about termination. So with that, I would ask that Your Honors would affirm the court order. Thank you. All right. Thank you. Mr. Hearing, Ms. Janfra, you've reserved some time for rebuttal. Thank you. Respectfully, Walgreen's continued attempts here to justify firing Ms. Lapham for alternative reasons confirms that the reason for firing her presents a jury question. With respect to the jury arguments about what Amanda Miranda believed, that is respectfully a jury argument. Amanda Miranda, who works in the Human Resources Office and was the author of the call logs, of course said that she didn't consider it to be a complaint. But when I followed up and I asked her, I said, if a third party viewed your words, or if a third party were viewing this, could they look at what you wrote and see these as a complaint about Ms. Lapham's FMLA and a request to fire her? And she had to concede that was so. So that argument they're making really is a jury argument. And the call logs, I've got them and I can read them. I don't have much time. But we do believe that they are direct evidence, and if not strong circumstantial evidence, of a retaliatory animus. Now, Ms. Lapham, of course, did prove pretext. The lower court said that she did. You can create a jury issue when you have Miranda testifying under oath, here's the conversation I had with Ms. Shelton. This is how it happened. This is what Ms. Shelton said. You can create a jury issue by then saying, well, your notes call into question, I guess, at worst, what you're saying right now, testifying under oath. I think what I was, I think during the deposition when I questioned her about her notes, I think she just conceded that, yes, a third party reviewing them could see them another way. Because she's a sophisticated HR manager, and especially she's going to say, well, gosh, this is not what it says. It doesn't say she's complaining about FMLA. But she's relaying, she's under oath, and she's relaying the conversation that she had with Ms. Shelton. Why isn't that the only fact that we really have before us? Well, she under oath, well, actually, her notes were documented in this. Her notes were documented here. So what I was, the point I was trying to make with her was that in reviewing your notes, anyone reviewing them, just because the notes speak for themselves, see that you are complaining about her FMLA, you know, that Ms. Shelton is asking to fire her on the basis of her FMLA requests. And so that was the point I was trying to make. And I will submit, and I know I only have six seconds, but Ms. Lapham provided evidence of pretext in numerous ways. And I'm out of time. All right. Thank you, counsel. Thank you. Court will be in recess until 9 o'clock tomorrow morning. All rise.